WINIFRED P. WAGNER AND JOSEPH W. WAGNER,
COMMITTEE OF GEORGE E. WAGNER, JR., LUNATIC,

*vs.*

MAYOR AND CITY COUNCIL OF BALTIMORE.

*Criminal insane: committed to State hospitals; not as punish-
ment, but for treatment, under Section 1 of Article 59 of
the Code; liability of estate.*

When a person accused of crime in Baltimore City is found
by the jury "Not guilty because of insanity," and is committed
to a State hospital for the insane, it must not be considered as
a punishment, but it is as if he has been adjudged insane under
Section 1 of Article 59 of the Code.                    p. 309

And where a committee of such person has been appointed by
the court, an order to the committee to pay to Baltimore City
the sum provided for by Section 45 of Article 59 for his sup-
port and maintenance in that institution is proper.    p. 309

*Decided April 8th, 1919.*

Appeal from the Circuit Court of Baltimore City. (SOPER,
C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*J. Royall Tippett,* for the appellants.

*S. S. Field, the City Solicitor,* and *Alexander Preston,
Assistant City Solicitor,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

In 1905 George E. Wagner, Jr., was tried in the Criminal Court of Baltimore City upon the charge of murder. The jury returned a verdict of "Not Guilty" because of insanity, and he was committed by the Court to the Springfield State Hospital, where he has been an inmate ever since.

The appellants, upon their petition were appointed committee for said George E. Wagner, Jr., by a decree of the Circuit Court of Baltimore City, passed on the 28th day of March, 1918. The petition alleged that the personal estate held by him at such time amounted to eight hundred and fifty dollars ($850.00), consisting of money in bank and a one-half interest in an insurance policy upon the life of one George W. Wagner, in which George E. Wagner, Jr., was a beneficiary.

On the 26th day of April, 1918, the Mayor & City Council of Baltimore filed their petition in said Circuit Court of Baltimore City, in which they alleged that the said George E. Wagner, Jr., was an insane patient in said institution, where he was being supported and maintained at the expense of the City, and where he had been so supported and maintained at its expense since December 15th, 1905; and asked the Court to pass an order authorizing and directing the said committee to pay to them the sum of three hundred dollars ($300.00) for the support and maintenance of said George E. Wagner, Jr., from April 22nd, 1915, to April 22nd, 1918.

The committee answered the petition, stating that the estate of said Wagner at such time was approximately of the value of eight hundred dollars ($800.00), and admitting that he was an insane patient at the Springfield Hospital where he had been confined since December 15th, 1905, but denied that he was a charity patient of the city, in that he "was tried before a jury in the Criminal Court of Baltimore City on an indictment charging him with murder and the jury * *. * returned a verdict of 'Not guilty because of Insanity,' and the judge, presiding in said Court, sentenced the said George E. Wagner, Jr., to the Springfield Hospital for the Insane," and alleging therein that under such proceedings and commitment,.

they were not legally bound to pay the city for the support and maintenance of said lunatic, while so confined in said institution.

Upon the petition and answer, the Court passed its order, dated Sept. 20th, 1918, directing the committee to pay to the petitioners out of the estate of George E. Wagner, Jr., the said sum of three hundred dollars ($300.00) for his maintenance and support in said institution for the period above named, and the further sum of one hundred dollars ($100) per annum for such period as the said George E. Wagner, Jr., should continue to be at said hospital at the expense of the City of Baltimore.   From that order this appeal has been taken.

Section 4 of Article 59 of the Code (1912) of Public General Laws of this State provides that:

> "When any person indicted for a crime or misdemeanor shall allege insanity or lunacy in his defense, the jury impanelled to try such person shall find by their verdict whether such person was, at the time of the commission of the offence, or still is insane, lunatic or otherwise."

And by section 5 of said article it is provided that:

> "If the jury find by their verdict that such person was at the time of committing the offence and then is insane or lunatic, the court before which trial was had shall cause such person to be sent to the almshouse of the county or city in which such person resided at the time of the commission of such act, or to a hospital, or some other place better suited in the judgment of the court to the condition of such prisoner, there to be confined until he shall have recovered his reason and be discharged by due course of law."

By section 45 of said article it is provided that:

> "for each patient in any State hospital for the insane from Baltimore City or any one of the counties in the State, the said city or county, as the case may be, shall as herein specified pay into the State treasury the sum of one hundred dollars ($100.00) for the board, care and treatment of such patient, and the remain-

> ing amount required for the board, care and treatment
> of such insane person shall be paid from the treasury
> of the State."

This section then provides that such expense shall be a charge upon the county (or city) from whence the patient is sent and also provides for the notice required to be given by the superintendents of the different hospitals of the State to the local officials as to the amount of such charges, and also states the procedure to be followed in the collection of the same, etc. The section then concludes by saying, "the amount incurred by any county of this State for treatment and maintenance of any insane person in the State Hospital for the Insane shall be a charge against the estate of such person," subject to the qualifications and restrictions therein mentioned which are not necessary to be stated in reaching a decision in this case.

It is contended by the appellants that this latter provision of section 45, making the costs of the treatment and maintenance of insane persons in the State Hospitals a charge against the estate of such persons to the extent of one hundred dollars ($100.00) per annum, does not apply to those patients that are committed to such institutions under sections 4 and 5, above stated; but that it applies only to those insane persons who are committed to such institutions under section 1 of said Article, upon the certificate of physicians, or, if demanded under the provisions of that section, by the inquisition or finding of a jury.

If we correctly understand the contention of the appellants, section 45 does not apply to sections 4 and 5 because of the fact that the confinement of such insane persons under those provisions of the Code partakes of a criminal punishment, and for such reason, should be distinguished in deciding the question before us from cases where the party is confined for treatment upon the application of himself or others in his behalf.

In the appellants' brief, it is said, "if the lunatic in this case was confined in the penitentiary or Baltimore City jail,

it would certainly not be necessary for his committee to pay for his support or maintenance in the penitentiary or city jail." It is thus seen that the appellants treat the confinement of insane persons committed under the provisions of sections 4 and 5 of the Code as if such confinement was in the nature of a sentence imposed upon such insane person as a punishment for the commission of some offence or crime.

In this they are in error. It is true that Wagner was indicted for the commission of a crime and was tried, but in the trial of the case it was shown that he was insane, and consequently, in legal contemplation, he, being insane, could not commit a crime. The verdict of the jury was that he was not guilty because insane, and when this conclusion was reached, he was thereafter to be treated simply as an insane person, just as he would have been treated under section 1 in the absence of any criminal charge against him. When his insanity was established by the verdict of the jury, he was no more a criminal than if he had never been charged with a crime, and he was in precisely the same situation as one who had, upon his own application or upon the application of others, been adjudged insane, under the provisions of section 1 of said article.

It is true a different procedure was followed in reaching that conclusion, but when his insanity was established, his confinement thereafter was and must be regarded and treated in the same manner as if he had been confined under section 1 of said article.

We may also add that in applying said provision of the statute, we discover no sound reason for distinguishing between those who upon application are adjudged insane and those who are found to be insane under sections 4 and 5 of said article; nor do we find anything in the statute indicating that it was the intention of the Legislature to create such distinction.

From what we have said the order of the Court below will be affirmed.

*Order affirmed, with costs to the appellee.*