## KEINER *v.* SUPERINTENDENT, SPRING GROVE STATE HOSPITAL

[No. 56, September Term, 1965.]

*Decided December 7, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, BARNES and McWILLIAMS, JJ.

Submitted on the brief by *Charlton T. Howard, Norman R. Stone, Jr.* and *Harry C. Davison, Jr.*, for appellant.

*Carville M. Downes, Assistant Attorney General,* with whom were *Thomas B. Finan, Atty. Gen., Frank H. Newell, III, Richard Byrd* and *A. Gordon Boone, Jr., State's Attorney* and *Assistant State's Attorneys,* respectively, *for Baltimore County,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant Keiner is confined in Spring Grove State Hospital for the insane, having been transferred from Clifton T.

Perkins State Hospital to which he had been committed on August 16, 1963, under Code (1964 Replacement Vol.), Art. 59 § 8 (b), following a determination by Judge Menchine sitting without a jury in the Circuit Court for Baltimore County that he was not guilty of murder as charged by the State because he was insane at the time of the commission of the killing (although he was found competent to stand trial). On December 10, 1964, Keiner filed a petition that he be brought before the Circuit Court under the provisions of Code (1964 Replacement Vol.), Art. 59 § 21, for the purpose of having his sanity determined by the Circuit Court. After a hearing, Judge Jenifer, sitting without a jury, decided on February 3, 1965, that Keiner was suffering from a mental disease or illness that would make him a danger to himself and a menace to the person or property of others if he were released into society, and ordered him recommitted to Spring Grove State Hospital.

In his appeal Keiner raises two points. First, he claims that since Judge Menchine found him sane at the time of trial (although insane at the time of the killing), he should have been presumed to be sane at the time of his sanity hearing and he was deprived of the benefit of this presumption by Judge Jenifer. Second, he argues in effect that the evidence was insufficient to warrant the finding made, or that Judge Jenifer was clearly in error in making that finding.

In Maryland in criminal matters "* * * a man is presumed sane until sufficient proof of his insanity is introduced to raise a question in the minds of reasonable men as to whether he is or is not sane." *Lipscomb v. State,* 223 Md. 599, 604. In 1826 by Ch. 197 of the Laws of that year the Legislature provided in substance what § 8 (a) of Art. 59 of the Code now provides— that if a jury finds one accused of crime "insane or lunatic" at the time of the crime and at the time of trial, it was the duty of the court to cause the person so found insane to be sent to an appropriate institution to be confined "* * * until such person shall have recovered his reason, and be discharged by due course of law." We held in *Wagner v. M. & C. C. of Balto.,* 134 Md. 305, that a finding by a jury of "not guilty by reason of insanity," makes the situation as if he had been judged insane under Sec. 1 of Art. 59 of the Code (by virtue of the

certificate of two qualified physicians)—"The verdict of the jury was that he was not guilty because insane, and when this conclusion was reached, he was thereafter to be treated simply as an insane person, just as he would have been treated under section 1 in the absence of any criminal charge against him." *Wagner v. M. & C. C. of Balto., supra* at 309. In *Salinger v. Superintendent,* 206 Md. 623, 628-29, we said:

> "One found to have been and to be insane in a criminal proceeding, is committed not because he did the act which caused him to be brought into court, but because it is not safe for him or the community for him to be at large. The confinement is not punishment, it is custodial. The acts which preceded it merely served to bring about a judicial determination in a particular form of the need for custodial confinement. This essential fact is not changed because, to avoid the consequences of his act, the accused, under Maryland law, must be suffering from a mental illness or a disease of a kind and to a degree which brings him within the Spencer rule. Other kinds and degrees of mental illness and disease are, of course, well recognized by medicine and the law and some of them make the victim a menace to society and himself if he is at liberty.
>
> "Once a determination of insanity has been made in the Criminal Court, the status of the one insane is the same as if the determination had been made otherwise."

By Ch. 43 of the Laws of 1963 the Legislature added paragraph (b) to § 8 of Art. 59 of the Code to read:

> "A person who has been found not guilty of any crime or offense by reason of insanity, in the discretion of the court, may be committed to one of the appropriate mental hospitals of the State for examination and evaluation to determine whether or not, by reason of mental disease or defect, the person is a danger to himself or to his own safety, or will be a menace to the safety of the person or property of

others. He shall be released forthwith upon a negative finding by such hospital, and in any event shall, at any time after three months from the date of such confinement, have the right to apply for his release pursuant to the provisions of § 21."

This section would seem to be a legislative declaration of the rule laid down by *Wagner* and *Salinger,* and if there was doubt before its enactment, there could hardly be afterwards that commitment under § 8 (b) after a finding of insanity at the time of the offense (despite a finding of sanity at the time of trial) must itself create a question in the minds of reasonable men as to whether the one committed is or is not insane, particularly if the institution in which he is confined has not made a "negative finding."

The matter of the presumption is of no real significance in the case at bar. Keiner's counsel told Judge Jenifer at the beginning of the hearing that he intended to call only the doctor who was treating Keiner at Spring Grove State Hospital and that he relied on the presumption of sanity which he claimed for his client for the sole purpose of requiring the State to call the doctor as its witness so that he could cross-examine him and not be required to call the witness and afford the State the opportunity of cross-examination. The following colloquy then ensued:

"MR. HOWARD: * * * I don't wish to lose advantage of that presumption, but I would be willing to call the doctor from the State as our witness with the understanding of the Court that we have not talked to the doctor and we do not know what his report is. If it is contrary to the psychiatric reports which I have received from the institutions, I would wish permission to claim surprise at that time and to cross-examine the doctor.

"THE COURT: With that understanding, I think it is immaterial as to who calls the doctor. We only have one witness who is to be used by both sides. If it comes to that point, the Court will take over the interrogation.

"MR. HOWARD: Thank you sir."

Manifestly the case proceeded below as it did by agreement, and Keiner is in no position to complain on appeal about what was agreed to below.

On the merits of Keiner's claim of sanity, the one witness, Dr. Hahn, a psychiatrist on the staff of Spring Grove, testified that Keiner's condition was about the same as when he first saw him several months before, that the staff report of Clifton T. Perkins Hospital showed Keiner to be "of such mental capacity as to be competent for trial" but that "he was not responsible for his action at the time of the alleged offense, because he suffered a disassociated reaction." The final diagnosis was "obsessive compulsive reaction." At the time of transfer to Spring Grove (which would appear to have been in November 1964), Keiner appeared "to be in a fairly good remission of his symptoms."

When asked if he had an opinion on whether Keiner has or has not a "mental disease," Dr. Hahn said: "I do feel that in the past Mr. Keiner was affected of a mental disorder [Keiner had shot a neighbor who had caused him trouble and threatened a fist fight a year before because, Keiner said, he couldn't take the laughter and the sneering of the neighbors anymore]. On my observation he has been what we call in a state of remission of symptoms, that is to say, he has not been psychotic during the time I have been observing him." Dr. Hahn added: "When any patient has shown good behavior and good self-control, we think about rehabilitation and eventual convalescent leave. I have to say *we do take chances with patients,* otherwise we wouldn't release anyone." (Emphasis added.) When the doctor later was asked "Are you stating that if the same stresses and conditions [as led to the shooting] occurred again there might be a reoccurrence, is that what you are saying, sir?" his answer was, "Very much likely, yes." Judge Jenifer thereafter asked this question:

> "Doctor, just one question. If Mr. Keiner were submitted to these similar stresses and conditions, in your opinion, if released to society and being faced with similar stresses and conditions, do you think he would then become a menace to the safety of other persons?" and the doctor's answer was: "I do feel that he may react in the same way."

We think that Judge Jenifer's conclusion that Keiner must continue in confinement, because the medical testimony was that by reason of his mental condition it was entirely likely that he would become a menace to persons with whom he might come in contact in society under circumstances such as drove him uncontrollably to the killing which led to his confinement, was justified.

We said in *Salinger v. Superintendent, supra* at 631, that one found not guilty by reason of insanity must, in order to obtain his release, "* * * satisfy a judge or jury of his sanity," not only under the M'Naghten rule but under the test of whether, as a free man, he would by reason of mental disease or condition be a danger to himself, his safety or the person or property of other people. The testimony before Judge Jenifer certainly permitted his finding that the release of Keiner would bring about the likely chance that he would endanger other persons he might encounter on his path of everyday, ordinary life outside an institution.

*Order affirmed, with costs.*