DURANT *v.* SUPERINTENDENT, CLIFTON T. PERKINS STATE HOSPITAL

[No. 401, September Term, 1967.]

*Decided December 2, 1968.*

The cause was submitted on brief to HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

Submitted by *Autry N. Noblitt* for appellant.

Submitted by *Francis B. Burch, Attorney General,* and *Edward R. Jeunette, Special Assistant Attorney General,* for appellee.

SMITH, J., delivered the opinion of the Court.

Appellant (Durant) is confined to Clifton T. Perkins State Hospital. He filed a petition on April 21, 1967, in the Circuit Court for Prince George's County stating he had been tried in that court on November 21, 1966, and found not guilty by reason of insanity in accordance with Code (1964 Repl. Vol.) Art. 59, §§ 8-12. He prayed for a hearing as prescribed in section 21 of said article. The crime involved apparently was a homicide in the year 1964.

In this case the trial court instructed the jury in part:

"* * * You are instructed that it is now your duty to determine whether or not Lindberg Durant is insane. Insanity in this instance being defined as one who by reason of mental disease or defect is a danger to himself or to his own safety or will be a menace to the safety of the personal property of others. There are three essential parts to your inquiry. One that he be suffering from a mental disease or defect, two, that he is a danger to himself or his own safety, and three, that he is a menace to the safety or personal property of others.

"If you find that Lindberg Durant is not suffering in [from?] a mental disease or defect then your verdict must be in his favor, from this finding alone. If you find that he is not a danger to himself or the personal [person or ?] property of others, then from this finding alone your verdict must be in his favor.

"In order to find against Durant you must find, one, that by reason of mental disease or defect, and two, he is a danger to himself and others.

"We further instruct you that the issue before you is not whether the petitioner has been guilty of a crime. Your sole duty today is to determine whether or not he is insane as we have previously defined it for you.

"We further instruct you that a mere criminal activity on the part of the petitioner will not support a determination of insanity and that neither mental disease or emotional defect or both make a person insane as in addition he must be a danger to himself or others.

"If you find from the evidence that the petitioner as he is today, does no longer demonstrate such danger, then your verdict must be in his favor.
* * *

"Now members of the jury, a paper will be handed you, Mr. Foreman, and after you, and the other mem-

bers of the jury have unanimously agreed on what your decision will be, you, Mr. Foreman, can mark—can repeat the word opposite yes or no in the place provided. If it is yes you will write the word yes. If it is no, you write the word no opposite the printed word. This will be the question [you] and the other members of jury will consider.

"*Is .Lindberg Durant still insane as set forth in Article 59, Section 8 B, of the Annotated Code of Maryland as to whether or not, by reason of mental disease or defect, the person is a danger to himself o[r] to his own safety, or will be a menace to the safety of the person or property of others.* (emphasis added)

"When you have reached your verdict you will mark that and then let the Bailiff know you have reached a verdict and then we will come into court to take the verdict and you will present the paper to the Clerk."

A special issue was submitted to the jury containing the language above italicized. It was answered in the affirmative. The trial took place October 3, 1967.

Durant complains that the trial court erred in its instructions to the jury and in the special issue presented to the jury in that reference was made to repealed laws. He further complains that evidence presented is not legally sufficient to support a verdict that Durant continued to be a danger to himself or to the person or property of others.

I.

No exception as would have been required under Maryland Rule 554 d if Durant took issue with the court's instruction was made by Durant's trial counsel. Durant is represented in this Court by other counsel.

Prior to June 1, 1967, Code (1964 Repl. Vol.) Art. 59, § 8 (b) read:

"A person who has been found not guilty of any crime or offense by reason of insanity, in the discretion of the court, may be committed to one of the ap-

propriate mental hospitals of the State for examination and evaluation to determine whether or not, by reason of mental disease or defect, the person is a danger to himself or to his own safety, or will be a menace to the safety of the person or property of others. He shall be released forthwith upon a negative finding by such hospital, and in any event shall, at any time after three months from the date of such confinement, have the right to apply for his release pursuant to the provisions of § 21."

Chapter 709 of the Acts of 1967 repealed sections 7 to 12, inclusive, of Art. 59 as it then stood and enacted new sections 7 to 12, inclusive. Section 8(b) of Code (1968 Repl. Vol.) of Art. 59 as enacted by Chapter 709 is concerned with matters unrelated to the issue here presented. Code (1968 Repl. Vol.) Art. 59, § 11 as enacted by Chapter 709 of the Acts of 1967 was properly applicable to this proceeding, having replaced the former § 8(b). The test therein provided for commitment is "whether such person by reason of mental disease or defect would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others." Release is to be pursuant to the provisions of § 21.

Durant's petition was filed under § 21. This section remains unchanged since its amendment by Chapter 352 of the Acts of 1955.

Code (1968 Repl. Vol.) Art. 59, § 21 provides in pertinent part:

"Any person confined in any State * * * institution for the care, custody or treatment of insane persons * * * may file a petition in the law courts of any county * * * either where he is confined, or from which he was committed, * * * requesting that the person so confined be brought before said court for the purpose of having the sanity of such person determined, and the court shall forthwith proceed to hear and determine the matter; provided, however, that if the person so confined, or anyone in his behalf, shall pray a jury trial, the court shall empanel a jury of

twelve men * * *. If the * * * jury * * * shall determine that such person is insane or is suffering from a mental disease, the court shall order said person committed to the institution from which he immediately came, or to some other suitable institution * * *."

In *Alexander v. Superintendent,* 246 Md. 334, 228 A. 2d 236 (1967) Judge Horney for this Court said:

"* * * In essence, the test for the release of a person committed to a mental institution is whether the patient if released would be a danger to the welfare of himself or society as a whole. In *Salinger v. Superintendent,* 206 Md. 623, 112 A. 2d 907 (1955) as well as in *Keiner v. Superintendent,* 240 Md. 608, 214 A. 2d 788 (1965) it was said that the test is whether the patient, as a free man, would by reason of a mental disease or condition be a danger to himself, his safety or the person or property of others. See also 29 Am. Jur. *Insane Persons* § 46 and the casenote in 21 Md. L. Rev. 279 with regard to the *Salinger* case." *Id.* at 337.

Accordingly, notwithstanding the unfortunate reference to a repealed statute in the issue and instruction, it is our view that the test presented to the jury was a proper test. There was no prejudice to Durant.

## II.

Doctor Raul Enrique Cuervo, a staff psychiatrist at Clifton T. Perkins State Hospital, diagnosed Durant's condition as "schizophrenic reaction, paranoid type with some anti-social trend." He indicated he had treated Durant since July 5, 1967, and he participated in a re-evaluation of Durant by the hospital staff on September 15, 1967. Dr. Cuervo testified:

"* * * [B]eing an individual that still quite recently showed that he couldn't control himself, in the sense that he acted out his aggressive impulses, his anger or whatever, we safely can assume that he is bound under a specific set of circumstances to react in a

similar fashion and become particularly a danger to other people."

The testimony of Dr. Cuervo was legally sufficient evidence for the jury to conclude Durant if released would be a danger to the welfare of himself or society as a whole. In a jury case in which there is legally sufficient evidence to support the jury verdict, the court will not inquire into the weight of the evidence. *Gray v. Director,* 245 Md. 80, 84, 224 A. 2d 879 (1966) ; *Montgomery v. Director,* 244 Md. 700, 223 A. 2d 776 (1966).

*Order affirmed, costs to be paid by Prince George's County.*