941 A.2d 1232

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE**

v.

**Linwood BEAN.**

**No. 1142 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Feb. 13, 2008.

Kathleen Ellis and David Wagner, Baltimore, MD, for Appellant.

Edward Smith, Baltimore, MD, for Appellee.

Panel: JAMES R. EYLER, ADKINS, JJ., and JOSEPH, F., MURPHY, JR., Judge of the Court of Appeals of Maryland, specially assigned.

JOSEPH, F., MURPHY, JR., Judge of the Court of Appeals of Maryland, specially assigned.

In the Circuit Court for Baltimore City, a jury decided that Linwood Bean, appellee, was eligible for conditional release from confinement in the custody of the Department of Health and Mental Hygiene (the "Department"), appellant, which now presents a single question for our review:

> Did the circuit court err in submitting to the jury the issue of Mr. Bean's eligibility for release when he did not present any expert testimony?

Appellee agrees that he did not present any expert testimony but argues that such testimony is not required under § 3–114 of the Criminal Procedure Article.[1] For the reasons that follow, we shall reverse the order releasing appellee, and remand for further proceedings not inconsistent with this opinion.

---

**1.** Additionally, appellee contends that the Department has filed this appeal in bad faith and with the sole purpose of depriving appellee of his freedom.

### Background

On December 3, 1985, appellee was found not criminally responsible for a charge of assault with intent to murder,[2] and was therefore committed to the Department for inpatient care and treatment. Appellee has since been conditionally released from inpatient treatment three times, the third of which was revoked on October 15, 2001, due to allegations that he had assaulted his landlady. Since that date, appellee has been a patient at the Clifton T. Perkins Hospital Center ("Perkins Hospital").

In the words of the Department's brief:

On December 23, 2004, pursuant to section 3–119 of the Criminal Procedure Article, [appellee] filed a petition requesting conditional release or discharge from his inpatient commitment to the Department. On June 20, 2006, a jury trial was held to determine whether he was eligible for conditional release or discharge.

During the jury trial, [appellee] presented the testimony of only two witnesses: himself, and his friend, Andrew Conwell. Neither was qualified as an expert, and neither is a physician, psychiatrist, psychologist, licensed clinical social worker, or other mental health or medical professional.

At the close of [appellee's] presentation of evidence, the Department moved for judgment because [appellee], who had the burden of proof, failed to present any expert witness testimony concerning the issue in the case: whether a mental disorder renders him a danger to himself or the

---

2. Health Gen. Art. § 12–108 was recodified as Crim. Proc. Art. § 3–109, effective October 1, 2001. That section provides:

(a) A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity to:

(1) appreciate the criminality of that conduct; or

(1) conform that conduct to the requirements of law.

(b) For purposes of this section, "mental disorder" does not include an abnormality that is manifested only by repeated criminal or otherwise antisocial conduct.

person or property of others if he were to be released from commitment with or without conditions. The circuit court denied the Department's motion.

The Department then presented the testimony of Lisa Sloat, M.D., [appellee's] psychiatrist at Perkins Hospital. After the court accepted her as an expert in forensic psychiatry, Dr. Sloat testified that her diagnosis for [appellee] is Schizoaffective Disorder, and that, because of that mental disorder, he would be a danger to himself or others if he were released from inpatient commitment with or without conditions. According to her testimony, with [appellee's] continued lack of insight into his mental disorder, there is little assurance that his violent past behaviors would not be repeated. Dr. Sloat also testified that [appellee] has not shown that he understands the connection between his mental disorder and his violent behavior or that he would be able to control his behavior once his symptoms return.

\* \* \*

At the close of all the evidence, the Department again moved for judgment on the same grounds as before, [appellee's] failure to present expert testimony. Its motion was again denied. The case was then submitted to the jury, and the jury returned the verdict that [appellee] should be released from inpatient commitment with conditions. On July 26, 2006, the circuit court entered an Order for Conditional Release. (footnote omitted).

The record shows that, when denying appellant's motion for judgment, the circuit court stated:

... I looked at the statute, I looked at the cases. And nowhere regarding hearings, whether it be administrative or judicial, is there any reference whatsoever to any requirement of expert testimony. In fact, at the release hearing, the statutory language talks about that they can consider any relevant evidence, and there certainly would have been an opportunity for the legislature in this judge's humble opinion, if they meant that I had to be determined to a standard of expertise, in other words, a standard or require-

ment of an individual with medical or psychiatric training, they could have referenced that. The test that falls upon the petitioner pursuant to Durant versus Superintendent of Perkins, which is a 1968 case, tests for release of person committed to mental institution is, if the patient if released would be a danger to the welfare of himself or society as a whole. That's the issue that's presented to the trier of fact. And in this case, at Petitioner's request, a juror. There's nothing that says that within that consideration that that has to be done to a reasonable degree of medical or psychiatric certainty, which would be the test for an expert opinion. So for those reasons I will deny the motion. This appeal followed.[3]

## Discussion

■ Section 3–114 of the Criminal Procedure Article provides:

(a) In general.—A committed person may be released under the provisions of this section and §§ 3–115 through 3–122 of this title.

(b) Discharge.—A committed person is eligible for discharge from commitment only if that person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if discharged.

---

3.  In the words of the Department's brief:

On July 27, 2006, pursuant to section 3–119(d)(2) of the Criminal Procedure Article, the Department filed an Application for Leave to Appeal ("Application"). Also, on July 27, 2006, the Department filed in the circuit court a Motion for Stay Pending Appeal. On August 18, 2006, the circuit court denied the Department's Motion for Stay Pending Appeal. On or about August 29, 2006, the Department filed with this Court a Motion for Stay Pending Appeal Pursuant to Rule 8–425. On October 19, 2006, this Court granted the Department's Application and the Motion for Stay Pending Appeal Pursuant to Maryland Rule 8–425. Between the time of the issuance of the Order for Conditional Release, July 26, 2006, and the Order of this Court granting the stay, October 19, 2006, [appellee] had not been released from Perkins Hospital because the Order for Conditional Release required that all services required under the Order for Conditional Release be verified as arranged and available before release, and those services had yet to be arranged.

(c) Conditional Release.—A committed person is eligible for conditional release from commitment only if that person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if released from confinement with conditions imposed by the court.

(d) Burden of proof.—To be released, a committed person has the burden to establish by a preponderance of the evidence eligibility for discharge or eligibility for conditional release.

The Court of Appeals has "held that reliance on lay testimony alone is not justified when the medical question involved is a complicated one, involving fact-finding which properly falls within the province of medical experts." *Jewel Tea Co. v. Blamble,* 227 Md. 1, 7, 174 A.2d 764 (1961); *see also Wilhelm v. State Traffic Safety Commission,* 230 Md. 91, 185 A.2d 715 (1962)(holding that where a "complicated medical question" is the alleged cause of negligent acts, medical expert testimony is required to prove the causal relationship); *Riggleman v. State,* 33 Md.App. 344, 353, 364 A.2d 1159 (1976)("Proof sufficient to raise a doubt in the minds of reasonable men as to an accused's sanity can only be adduced through competent medical evidence to the positive effect that the accused, as a result of mental disorder, lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.")

■ It is well settled that the testimony of one expert staff psychiatrist at the mental institution where the defendant has been confined is "legally sufficient evidence for the jury to conclude [that the defendant] if released would be a danger to the welfare of himself or society as a whole." *Durant v. Superintendent, Clifton T. Perkins,* 251 Md. 467, 473, 248 A.2d 148 (1968). The *Durant* Court also stated:

In essence, the test for the release of a person committed to a mental institution is whether the patient if released would be a danger to the welfare of himself or society as a whole. In *Salinger v. Superintendent of Spring Grove State Hospital,* 206 Md. 623, 112 A.2d 907 (1955) as well as in *Keiner v.*

*Superintendent,* (Spring Grove State Hospital) 240 Md. 608, 214 A.2d 788 (1965) it was said that the test is whether the patient, as a free man, would by reason of a mental disease or condition be a danger to himself, his safety or the person or property of others.

*Id.* at 472, 248 A.2d 148 (quoting *Alexander v. Superintendent, Spring Grove State Hospital,* 246 Md. 334, 228 A.2d 236 (1967)); *see also Gray v. Director, Patuxent Institution,* 245 Md. 80, 84, 224 A.2d 879 (1966)(holding that one doctor's testimony, along with reports and recommendations of other staff, was legally sufficient to support a jury verdict that defendant remain committed); *Washington v. Director, Patuxent Inst.,* 237 Md. 311, 206 A.2d 244 (1965)(holding that a report recommending defendant as a defective delinquent was sufficient evidence to support the jury verdict despite testimony from defendant's psychologist that he was not a defective delinquent).

Unlike the *Durant* case, the jury here found that appellee would not pose a danger to society if he were released, even though (1) appellee had presented no expert testimony in support of that finding, and (2) the Department had presented expert testimony against his release. Appellee argues that, because the Department presented expert witness testimony, there was no valid reason why he should be required to do so. We are persuaded, however, that disbelief of the Department's expert testimony does not constitute affirmative evidence to the contrary.

In *Toy v. Mackintosh,* 222 Mass. 430, 110 N.E. 1034 (Mass. 1916), the Supreme Judicial Court of Massachusetts reversed a judgment entered in favor of a dental malpractice plaintiff who did not present expert testimony that the defendant dentist was negligent when performing a procedure. The court concluded that although the jurors were entitled to disbelieve the defendant's expert testimony, a finding of negligence could not be based upon such disbelief. *Id.* at 431–32, 110 N.E. at 1035.

In *DeVeau v. United States,* 483 A.2d 307 (D.C.1984), the District of Columbia Court of Appeals considered whether the

trial court was correct in denying an acquittee's request for conditional release even though five witnesses—including a hospital psychiatrist, two other psychiatrists, and the two proposed custodians—all testified in favor of granting the petitioner a conditional release. The D.C. Court of Appeals stated:

... It is submitted that when, as is alleged in this case, all of the medical testimony points in favor of release, the trial court must defer necessarily to the hospital's determination and therefore release the acquittee. We cannot agree.

\* \* \*

Given the specialized nature of the inquiry, the importance of the psychiatrists' testimony is obvious, despite the "lack of certainty and fallibility of psychiatric diagnosis." *Addington v. Texas*, 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979). It is also obvious that, in the course of the hearing, psychiatrists will offer opinions on each of the above factors, and how they bear on the decision whether to release the acquittee. Although the trial court is not bound necessarily by the testimony of the "experts," *see supra* Part I, it may not arbitrarily disregard such testimony. *See United States v. McNeil, supra*, 140 U.S.App.D.C. at 240–41, 434 F.2d at 514–15 (Bazelon, C.J., concurring) (quoting *Douglas v. United States*, 99 U.S.App.D.C. 232, 239, 239 F.2d 52, 59 (1956)).

Based upon their evaluations of the factors heretofore discussed, and any others deemed relevant, the doctors will render predictive opinions concerning future dangerousness of the acquittee. The court must take into account these professional opinions, whether there is a consensus expressed, and whether the doctors have persuasively given reasons for their opinions.

*Id.* at 314–16 (footnote omitted).

In *Jones v. United States*, 432 A.2d 364 (D.C.1981), the D.C. Court of Appeals, while affirming a trial court ruling denying an acquittee's motion for release from civil commitment, stated:

The rational justification for placing the burden of proof on a committee is that his mental illness and dangerousness have previously been convincingly established. In light of those established facts, the law gives effect to a presumption of continuity of status. It comports with normal perceptions of reality and hence is rational to assume that, once a given status is proven to exist, it continues to do so in the absence of evidence showing the contrary to be more likely than not. In *Waite* [*v. Jacobs*, 154 U.S.App.D.C. 281, 475 F.2d 392 (1973)], however, the presumption was not applicable because unlike in the instant case, the appellant had never been afforded a post-acquittal judicial hearing on the question of his continued mental illness and dangerousness.

The availability of a jury trial under § 21–545(b) and the absence of such a right at a § 24–301(d) hearing is also an insubstantial difference because the findings of mental illness and dangerousness are based on expert testimony and are not matters uniquely within the province of a jury of lay persons. In *Addington v. Texas*, 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979), the Court explained that in contrast to delinquency proceedings or criminal prosecutions where "the basic issue is a straightforward factual question did the accused commit the act alleged," the factual questions in a civil commitment proceeding "represent only the beginning of the inquiry." The Court continued: "Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists." *Id.* (emphasis in original). Thus, both judge and juror are forced to rely on expert evidence in commitment proceedings, significantly diminishing the importance of their personal judgment, values and experience.

*Id.* at 374.

In *Winchester v. Bartlett*, 532 So.2d 1258 (Ala.Civ.App. 1988), while affirming a trial court's decision that an insanity acquittee should not be released, the Court of Civil Appeals of Alabama stated:

The release of an insanity acquittee in the Alabama mental health system is usually initiated by his treatment team. Several factors are considered, including "mental state, dangerousness, satisfactory placement, and whether the acquittee can be trusted to take his medication." *Williams v. Wallis,* 734 F.2d 1434, 1436 (11th Cir.1984). If the treatment team does not initiate release, however, § 15–21–3, Ala.Code 1975 (1982 Repl. Vol.), is available, which provides for the prosecution of a writ of habeas corpus by "[a]ny person confined as insane." An insanity acquittee must prove by a preponderance of the evidence that he is no longer mentally ill or dangerous in order to prevail in the habeas proceeding. *Williams v. Wallis, supra; Knight v. State,* 460 So.2d 876 (Ala.Crim.App.1984).

Whether the acquittee is mentally ill at the time he seeks release is a medical question. But whether he is dangerous is a question that involves not only medical opinion but also a legal and social judgment. *Powell v. Florida,* 579 F.2d 324 (5th Cir.1978). The dangerousness of an insanity acquittee is established by his antisocial behavior in committing a crime, and as the Fifth Circuit noted in Powell, "[t]his past conduct justifies a greater role for the trial judge in determining whether an insanity acquittee remains dangerous to society in order to protect society from similar behavior in the future." 579 F.2d at 333.

*Id.* at 1259–60.

On the basis of the decisions quoted above, we conclude that the issue of whether appellee would pose a danger to himself or others if released from confinement presents a complicated medical question that requires expert testimony. To generate a jury issue on the question of whether he was entitled to a conditional release, appellee had the burden of producing expert testimony that he would not pose a danger if released from the hospital. Because he did not do so, the Department was entitled to a judgment in its favor as a matter of law.[4]

---

4. Our reversal of the judgment in favor of appellee is without prejudice to his right to again petition for a conditional release.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF JUDGMENT IN FAVOR OF THE APPELLANT; APPELLEE TO PAY THE COSTS.**