## McCLOSKEY *v.* DIRECTOR, PATUXENT INSTITUTION

[App. No. 33, September Term, 1965.]

498

*Decided February 15, 1967.*

Before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

BARNES, J., delivered the opinion of the Court.

James G. McCloskey appeals from an order of the Circuit Court for Cecil County (George B. Rasin, Jr., J.) committing him to Patuxent Institution. A jury had redetermined that the applicant was a defective delinquent, pursuant to Maryland Code, Article 31B, section 10.

The court below was faced in this case with a number of difficult procedural questions, not expressly answered by Article 31B or by our decisions interpreting it. We believe some of these questions were incorrectly determined, and therefore, must remand this matter for a new trial. The errors below all stem from the fact that the applicant, McCloskey, is a man determined to handle his own defense.

McCloskey filed a petition for a redetermination hearing in proper person, together with a petition to proceed in forma pauperis in the Circuit Court for Cecil County. The case was assigned for hearing and counsel appointed to represent the petitioner on October 5, 1964.

At the petition of his court-appointed counsel, the applicant appeared on October 21, 1964 at a pre-trial conference. At this time, McCloskey orally requested that he be supplied with a

copy of the transcript of his first defective delinquency trial and that he be permitted to examine his complete record filed at Patuxent Institution. The judge denied this request on the ground that because the applicant had an attorney appointed at State expense, he had no right to seek this information himself, but had to proceed through his lawyer.

McCloskey wrote his attorney on November 23, 1964, stating:

"In a letter dated November 3, 1964 I specifically requested you to petition the Cecil County Circuit Court to give me a copy of the stenographic transcript of my previous defective delinquency trial and to permit me to examine my complete record at the Patuxent Institution. * * *

"[Y]ou have not in any way indicated to me that you have complied [with these requests] * * *. Nor have you seen fit to give me an explanation or reason whatsoever for not complying with my requests, although you have had sufficient time in which to do so. * * *

"I regret to say but I must, under the circumstances, dismiss you from my case. * * *."

The applicant sent a copy of this letter to Judge Rasin together with a request that the Court "appoint another attorney to represent me. * * * However, in the event the court cannot find such an attorney for me," McCloskey wrote, "I will represent myself."

In a reply to the applicant on November 25, 1964, the judge stated that while he would not permit the applicant to examine his Patuxent records, his attorney "had the right to examine the files at Patuxent Institution." The judge added:

"If your only complaint against [court-appointed counsel] is that contained in your letter to him, I find your dissatisfaction to be without merit. From my experience with [counsel] in other cases, he is perfectly competent to represent you, and I decline your request to name another attorney."

The applicant's counsel wrote him on December 1, 1964, "Please advise me within the next five (5) days as to whether

or not you are going to proceed without counsel, or if in view of Judge Rasin's letter [supra], you wish me to remain in the case." On December 10, 1964, counsel attempted to strike his appearance in McCloskey's case, in accordance with instructions given him by the applicant by letter of December 4, 1964. The trial court did not give its required approval to this action, however. Maryland Rule 125 a.

Meanwhile, the court became advised by the applicant's counsel that McCloskey intended to claim at his redetermination hearing that he was legally insane and therefore could not properly be committed to Patuxent Institution. The court wrote the applicant on December 7, 1964: "Of course, if you are claiming insanity, then the Court would feel compelled to have an attorney represent you at the time of your hearing," and asked the applicant to inform the court whether, in fact, he desired to pose an insanity defense. McCloskey answered on December 11, 1964,

> "It was originally my intention to claim insanity at my forthcoming redetermination hearing. However, your recent letter indicates that such a plea might result not only in the court appointing an attorney to represent me who I don't want, but one I will be unable to dismiss. Under the circumstances, a plea of insanity does not seem feasible.
>
> "Your question concerning whether I plan on claiming insanity at my forthcoming redetermination hearing has developed complications of a nature which has made it impossible for me to give a qualified and definite answer to without first reading my complete record. Although I am at the present time representing myself * * * and therefore legally and rightfully entitled to examine said record, I cannot do so unless and until you authorize it. * * *."

Responding to this request, the Judge advised McCloskey on December 15, 1964:

> "In a review of Art. 31B of the Annotated Code of Maryland (1964 Supplement), which deals with defective delinquency, I note that Section 10, dealing

with the redetermination issue, provides, among other things, that you have the right to counsel. Section 8(b), dealing with the appointment of counsel, provides that unless you shall designate counsel of your own choice, and unless counsel of your own choice files his appearance, that the Court *"shall* appoint counsel to represent your person" [sic]. The Section further provides "Counsel for the person and for the State shall have access to all papers in the possession of the Court bearing on the person's case, including a copy of the report of the Institution." I am, therefore, modifying my previous statement to you that if you do not accept the services of a Court-appointed counsel that I shall permit you to have access to the records at the Patuxent Institution. It is clear, the law does not contemplate your having access to these records.

"I am therefore, continuing [the attorney's] appointment as Court-appointed counsel and will relieve him of that appointment only upon some other attorney of your choice and *employment* filing his appearance to represent you. You may use [court-appointed counsel] if you care to, or you may not use him. In any event, [he] will be assigned to sit at the trial table as a source available to you if you desire legal counsel, and the record will so indicate. * * *."

McCloskey replied, on December 19, 1964, and again on February 1, 1965, that he had not changed his mind regarding his decision to represent himself. On December 21, 1964, in proper person, the applicant filed a formal petition requesting the Court, inter alia, to "1) Issue forth an order permitting him to examine his complete record and/or all information that is to be used against him in [the redetermination hearing]. 2) Provide him with a stenographic transcript of his previous defective delinquency trial. 3) Provide him with, at least 15 days before his * * * trial, the names of the witnesses who are to appear and testify against him." A second formal petition ("Motion for Discovery") reiterating those requests and demanding other information relevant to the applicant's defense was filed, in proper person, on January 29, 1965. The court

did not refuse to consider this petition, even though it was prepared and filed by the applicant rather than his counsel. An order was issued on February 8, 1965 directing the Clerk to furnish copies of the motion to the court-appointed counsel and to the State's Attorney for Cecil County, directing the latter to show cause why all or part of the information requested should not be furnished. Answer was filed and after hearing on March 26, 1965, all requests for discovery were denied, except the demand for the names and addresses of all of the State's witnesses. This information was furnished to the applicant and his attorney. From the record, we infer that both the petitioner and his appointed counsel were present at the hearing.

By letter of April 8, 1965, the applicant again requested that he be permitted to represent himself at the redetermination hearing. To this the judge replied on April 15, 1965:

"* * * because of your indication that you were going to raise the issue of insanity as a basis for your release from Patuxent Institution, I cannot and indeed do not believe 'due process' would countenance the Court permitting one who claims to be insane to conduct his own defense. If you have 'counsel of your own choosing' who can represent you as a result of your employment, he will certainly be permitted to represent you. However, so long as you claim to be a pauper and so long as I believe as I do that [the attorney already appointed] is competent to represent you, I shall not change the assignment of counsel already made."

On April 22, 1965, the applicant, in proper person, filed a copy of a Motion to Dismiss his forthcoming redetermination hearing on the grounds, among others, that he was denied access to reports and other information necessary to his defense, and that he was being denied the opportunity to represent himself.

A jury found McCloskey to be a defective delinquent at a hearing on April 30, 1965. The applicant alleges that at this proceeding, his motion to vacate the hearing was orally presented and denied by the court below. McCloskey was recom-

mitted to Patuxent Institution on May 3, 1965. Application for leave to appeal was filed, in proper person, on May 18, 1965.

(1)

We believe the lower court erred in ruling that the appointment of counsel, made mandatory by Article 31B, section 8, cannot be waived by the applicant. As we view the matter, a defendant in an Article 31B proceeding may waive his right to be represented by an attorney if he knowingly and intelligently does so. Furthermore, we think the fact that the defendant planned to raise the defense of insanity at his redetermination hearing would not, standing alone, justify a finding that the waiver of counsel was not intelligently made.

We start with the premise that even though Article 31B proceedings are deemed to be civil in nature, the statute must be construed in accordance with basic rights of Constitutional due process. Cf. *Daniels v. Director,* 243 Md. 16, 45, 221 A. 2d 397 (1966).

In *Adams v. United States ex rel. McCann,* 317 U. S. 269 (1942), the Supreme Court, reviewing the rights of criminal defendants, reaffirmed the position taken in *Johnson v. Zerbst,* 304 U. S. 458 (1938), that "an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. * * * Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with his eyes open." See also, *Palacorolle v. State,* 239 Md. 416, 420, 211 A. 2d 828 (1965); *State ex rel. Meekins v. Superintendent,* 203 Md. 655, 99 A. 2d 724 (1953). Federal cases, amplifying *Adams,* have held that the right to waive representation by counsel is "implied" in the "Due Process" clause of the Fifth Amendment, as well as the Sixth Amendment. *United States v. Plattner,* 330 F. 2d 271 (2d Cir. 1964); *United States ex rel. Maldonado v. Denno,* 348 F. 2d 12 (2d Cir. 1965) and cases therein cited; *United States v. Redfield,* 197 F. Supp. 559 (D. Nev. 1961), affirmed. 295 F. 2d 249, cert. denied 369 U. S. 803

(1962); *United States v. Johnson*, 333 F. 2d 1004 (6 Cir. 1964).

We believe a construction of Article 31B, section 8, in accordance with Constitutional standards of due process, requires that the defendant may waive his statutory right to counsel and appear pro se. We add, however, that the defendant's right to represent himself is not absolute. If the defendant is unable to make a knowing and intelligent waiver, he must be forced to accept the assistance of an attorney. See *People v. McFerran*, 211 Cal. App. 2d 4, 26 Cal. Rptr. 914 (1962); *McCann v. Maxwell*, 174 Ohio St. 282, 189 N. E. 2d 143 (1963); *Browne v. State*, 24 Wis. 2d 491, 131 N. W. 2d 169 (1964), cert. denied 379 U. S. 1004, reh. denied, 380 U. S. 959 (1965).

In the case before us, the lower court first denied the applicant's request to proceed pro se because it, erroneously, viewed the statute as barring waiver of counsel. The court later added as a basis for its decision that the applicant was planning to raise insanity as a defense to his redetermination as a defective delinquent.

If there were some substantial evidence that the defendant was insane, this would surely be sufficient ground for the court's refusal to permit him to appear pro se. The applicant's attempted waiver of counsel would not be intelligently made. Cf. *Evans v. United States*, 83 A. 2d 876 (D. C. Mun. Ct. of Appeals 1951). But the applicant's mere statement that he planned to rely on a defense of insanity is legally insufficient to prevent him from intelligently waiving his right to counsel. The presumption that a man is sane applies to both criminal and civil matters, *Keiner v. Superintendent*, 240 Md. 608, 610, 214 A. 2d 788 (1965); *Arbogast v. MacMillan*, 221 Md. 516, 158 A. 2d 97 (1960). Where the mental capacity of a person to waive his right to counsel is at issue, the presumption must be rebutted by facts adduced by preliminary examination or observation by the trial judge indicating that the defendant is incompetent to make an intelligent waiver. *Palacorolle v. State, supra; McMahon v. Mayo*, 92 So. 2d 806 (Fla. 1957). No factual examination of this type was made in the case before us until the day of trial, when the court found the defendant to be legally sane. At no time did the court have reasonable grounds to believe that the

applicant's waiver of counsel was not intelligently made. Absent such grounds, the applicant should have been permitted to represent himself.

## (2)

Despite this error, no prejudice would have resulted to the defendant had the court permitted him access to the records, papers and other properly discoverable information bearing on his case. The court did not force representation by counsel upon the defendant, but stated, "You may use [court-appointed counsel] if you care to, or you may not use him. In any event, [he] will be assigned to sit at the trial table as a source available to you if you desire legal counsel, * * *."

We believe, however, that if a defendant in a defective delinquency proceeding knowingly and intelligently waives his right to counsel, he may take advantage of the right to obtain proper information relative to his defense. Whether or not Article 31B, section 8 is construed to permit the defendant himself to do this,[1] we think is not determinative; for in addition to the specific statutory safeguards, the defendant "has available to him all discovery procedure permitted under the Maryland Rules in civil cases, which is much broader than in criminal cases, including the taking of depositions, the use of interrogatories and the demands for admissions of facts." *Daniels v. Director,* 243 Md. at 44, 221 A. 2d at 413. The Maryland Rules (Rules 400-425) make clear that discovery procedures are available to the party personally, at least where he is not represented by an attorney of record.[2]

In view of our holdings, this case must be remanded for a new redetermination hearing. If the applicant desires to defend

---

**1.** The Report of Commission to Study and Re-Evaluate Patuxent Institution 19 (1961) states, "The protections afforded to the defendant include * * * full access *by the defendant and his counsel* to all records, reports and papers of Patuxent relative to the defendant and to all papers in the Court's possession bearing upon the case, * * *." (Emphasis supplied).

**2.** We leave open the question of whether and to what extent a defendant may participate in his own defense where he is represented by an attorney.

and appear pro se, the lower court must determine whether the waiver of counsel is knowingly and intelligently made or whether other valid reasons exist for requiring an attorney to represent the applicant. If waiver is permitted, the applicant must be allowed to use the discovery procedures provided by the Maryland Rules. If waiver is not permitted, counsel should be given full responsibility for preparing and presenting the defense.

## (3)

Because a new trial has been ordered, we need not consider the applicant's allegations of errors relating to the conduct of his redetermination hearing. McCloskey has raised certain Constitutional objections to his confinement, however, which may best be considered at this time. The applicant contends that: a) Patuxent Institution is a prison; b) his confinement there for a mental disorder constitutes a cruel and unusual punishment in violation of the Eighth Amendment to the Constitution; c) incarceration in Patuxent rather than a State mental institution denied the applicant equal protection of the law; d) the applicant is denied equal protection of the law (and exposed to double jeopardy) by being confined at Patuxent beyond the expiration of his sentence for criminal conviction; e) the members of the jury finding the applicant to be a defective delinquent were required to affirm a belief in God (although the applicant does not claim he was prejudiced by this). All of these contentions rest on the erroneous assumption that the procedures under Article 31B are criminal in nature. We have treated identical contentions in prior cases and have found them to be without merit. *Daniels v. Director, supra; Mastromarino v. Director,* 244 Md. 645, 224 A. 2d 674 (1966).

Likewise without merit is the contention that the applicant was not forewarned that his statements to personnel at Patuxent could be introduced in evidence at his redetermination hearing. Since proceedings under Article 31B are civil in nature, and the applicant's statements did not subject him to criminal responsibility, there is no Constitutional infirmity in this practice. Nor can we perceive any statutory basis for the right. On the contrary, such a rule would seriously damage one of the avowed

purposes of the defective delinquency law, to rehabilitate inmates in the institution's care.

*Application for leave to appeal granted, and case remanded for further proceedings consistent with this opinion.*