## JOSEPH FRANKLIN MARSH *v.* STATE OF MARYLAND

[No. 902, September Term, 1973.]

*Decided July 19, 1974.*

The cause was submitted on briefs to MORTON, MENCHINE and LOWE, JJ.

Submitted by *Joseph S. Casula* for appellant.

Submitted by *Francis B. Burch, Attorney General, Donald*

*R. Stutman, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County* and *E. Garrison Neal, Assistant State's Attorney for Prince George's County,* for appellee.

MENCHINE, J., delivered the opinion of the Court.

Joseph Franklin Marsh had been convicted and sentenced in the Circuit Court for Prince George's County for robbery with a dangerous and deadly weapon. On February 22, 1972 the trial court upon its own initiative ordered examination of Marsh under § 6 of Article 31B of the Annotated Code of Maryland. On September 20, 1972 the Director of Patuxent Institution, acting pursuant to the provisions of § 7 of that Article, transmitted a report to the Circuit Court for Prince George's County concluding as follows:

> "Therefore, based on all the available accumulated records and recent past examinations, *it is concluded that Joseph Marsh does meet the statutory definition of being a Defective Delinquent under Article 31B of Annotated Code of Maryland and his commitment is recommended.* It would have been well for Mr. Joseph Marsh to have obeyed the Order of Court and taken advantage of the opportunity for direct, personal, up-to-date psychological, psychiatric examinations." (Emphasis added.)

Upon receipt of that report the court passed an order on September 21, 1972 setting the case for hearing for determination of defective delinquency in accordance with the provisions of § 8 of Article 31B. The hearing was scheduled for January 25, 1973.

On January 22, 1973, however, the State filed a motion for continuance, alleging that necessary witnesses were unavailable on the scheduled date. The hearing was rescheduled for trial on March 12, 1973, but was not then heard. Instead, on that date the State's Attorney for Prince George's County sought and obtained an "Order for further

examination at Patuxent Institution" providing, *inter alia*, the following:

> "ORDERED, that in accordance with the provisions of Article 31B of the Annotated Code of Maryland, the said defendant be taken directly from whatever place he may presently be confined and delivered to the custody of the Director of the Patuxent Institution, *who shall cause him to be examined for the purpose of determining whether or not he is a defective delinquent as defined in Section 5 of said Article;* and more specifically that he shall submit to the following testing procedures; (1) The Wechsler Adult Intelligence Scale; (2) the Bender-Gestalt Test; (3) the Projective Drawing Test; (4) The Rorschak Ink Blot Test; (5) A Social Service Interview; (6) An electroencephalogram; (7) A psychiatric interview; and that he shall cooperate with the staff in the examinations;" (Italics supplied.)

On July 26, 1973 the State's Attorney for Prince George's County, alleging the refusal by Marsh to obey the order of March 12, 1973, filed a petition for a Rule to Show Cause why Marsh should not be held in contempt. Appended to that petition as Exhibit A was an interval note of the Patuxent Institution declaring that as the result of a reevaluation on May 1, 1973, "it was the conclusion of the Staff that Joseph Franklin Marsh met the statutory definition of being a Defective Delinquent, under Article 31B of the Annotated Code of Maryland, and his commitment to this Institution was recommended." The interval note ended with the comment: "It would be desirable to perform a complete personal psychiatric and psychological examination on this patient."

On the same date the following order was passed by the Circuit Court for Prince George's County:

> "IT IS ORDERED; this 26th day of July, 1973, by the Circuit Court for Prince George's County, that the defendant, Joseph Franklin Marsh, show cause

at a hearing to be held on the 28th day of August, 1973, at 10:00 o'clock, why he should not be held in contempt of this Court for not cooperating with the staff of Patuxent Institution and submitting himself for examination and evaluation as per the Order of this Court dated March 12, 1973.

"IT IS FURTHER ORDERED, that Harold M. Boslow, M. D., Director, Patuxent Institution, or his designee(s), appear at said hearing for the purpose of advising this Court of the efforts that have been made to complete the examination and evaluation, *why it is not possible to furnish a report to the Court* and what acts of cooperation on the part of the defendant, Joseph Franklin Marsh, are required in order that said examination and evaluation can be completed." (Italics supplied.)

We reiterate that at that point in time, Patuxent authorities twice had reported to the court that the appellant was a defective delinquent.

On August 31, 1973 an "Amended Rule to Show Cause" was passed in the proceedings. That amended rule to show cause provided, *inter alia*:

"IT IS ORDERED; this 31st day of August, 1973, by the Circuit Court for Prince George's County, that the defendant, Joseph Franklin Marsh, show cause at a hearing to be held on the 7th day of September, 1973, at 10:00 A. M., why he should not be held in contempt of this Court for not cooperating with the staff of Patuxent Institution and submitting himself for examination and evaluation as per the Order of this Court dated March 12, 1973.

"IT IS FURTHER ORDERED, that Harold M. Boslow, M.D., Director, Patuxent Institution, or his designee(s), appear at said hearing for the purpose of advising this Court of the efforts that have been made to complete the examination and evaluation, and what acts of cooperation on the part of the

defendant, Joseph Franklin Marsh, are required in order that said examination and evaluation can be completed."

Except for deletion of the words we have shown in italics in the order of July 26, 1973, the second order was identical to the first. The missing words are of significance here. Their absence, in effect, constituted a ruling by the trial court that an inmate must submit to personal examinations even though the institution was able, by other means, to make the definitive report to the court required by § 7(a) of the Act and that the mandate of § 8 must be deferred until such submission has occurred.

On September 27, 1973 the Director of Patuxent Institution transmitted a third report to the court that "the patient has continued to refuse psychiatric and psychological evaluation. There is nothing to indicate that any change has occurred in this patient since the original evaluation. Therefore, this original diagnostic report is again being proffered to the Court as the Institution's current evaluation in this particular case."

Upon proof at hearing that the appellant had refused to obey the order of March 12, 1973, the trial court passed an order on October 25, 1973 that:

" * * this Court hereby finds the defendant to be in contempt of a lawful order of this Court and hereby imposes a sentence of an indeterminate period of time to be served at the Patuxent Institution until said defendant purges himself of contempt of this Court by submitting to the previously ordered examinations."

This appeal followed.

The appellant makes the following contentions:

1. That the trial court lacked jurisdictional power to require the ordered examinations.

2. That the order of the trial court violated appellant's privilege against self-incrimination.

3. That appellant could not be held in contempt because the Patuxent Institution staff had reported to the court that it had made the evaluation that he was a defective delinquent.

We find issues 1 and 2 to be controlled by a prior decision of this Court. We shall discuss them together.

### *Jurisdiction—Self-Incrimination*

The contentions relating to jurisdiction and self-incrimination are without merit. *Savage v. State,* 19 Md. App. 1, 308 A. 2d 701, is dispositive as to both.

As to jurisdiction, in *Savage v. State, supra,* we said at page 12 [707]:

> "Savage claims that the court below was without jurisdiction to order him to submit to an examination at Patuxent because there is no statutory authority for such an order. We think that the authority is implicit in Code, Art. 31B. Section 7(a) requires that the examination for possible defective delinquency shall be made by at least three persons on behalf of the Institution, one of whom shall be a medical physician, one a psychiatrist, and one a psychologist."

As to self-incrimination, we said in *Savage, supra,* at pages 19-20 [711-712]:

> " * * * Despite, however, the absence of statutory authority to grant immunity, we think that under our holding, *supra,* a court has authority under Code, Art. 31B to order examination for evaluation of possible defective delinquency, that recognition should be given to the privilege against self-incrimination when communications, even though not privileged, made during the course of that examination, are attempted to be used to obtain a conviction for crime. Therefore, the privilege against self-incrimination is no bar to

compelling the examination for possible defective delinquency."

We adhere to those rulings.

### The Effect of the Reports of the Institution

*Savage, supra,* is not dispositive of this issue for the reason that in that case Patuxent Institution had reported to the court that the patient's refusal to obey the court's order for examinations had produced the result that "no recommendation in regard to defective delinquency can be made * * *."

Article 31B, § 8 reads as follows:

"§ 8. *Hearings.*

(a) *When required; defendant to be advised of right to counsel.* — If the institution for defective delinquents in its report on any person shall state that he is a defective delinquent, the court shall forthwith summon the person before it and advise him of the substance of the report and of the pendency of the hearing hereinafter provided; the court shall further advise him of his right to be represented at said hearing by counsel of his choice, or if he has no choice, by competent counsel appointed by the court.

(b) *Appointment and rights of counsel.* — Unless appearance of counsel chosen by the person is entered within twenty days following the proceeding set forth in subsection (a) hereof, the court shall appoint counsel to represent the person. Counsel for the person and for the State shall have access to all records, reports and papers of the institution relating to the person, and to all papers, in the possession of the court bearing upon the person's case, including a copy of the report of the institution.

(c) *When hearing held; jury.* — The hearing for determination of defective delinquency shall be

held no less than thirty days following designation of counsel, unless acceleration of the time is requested by the person or his counsel. Upon the application of the State or of the person for a jury trial, or upon its own motion, the court shall empanel a jury of twelve persons to be selected by the court from the jurors then in attendance upon said court; or if the court is in recess, the jurors shall be selected from those in attendance at the term of court at which said petition is heard. The court shall direct such jury after hearing to find specially, by its verdict, whether the person is a defective delinquent as defined in § 5. In the absence of request for finding by a jury, the court may make such determination sitting as judge and jury."

It is clear that the section mandates arraignment, appointment of counsel and hearing upon receipt by the court of a report from Patuxent that an inmate is a defective delinquent.

The filing of such a report should have set in motion the procedures so mandated. Indeed, the court's order of September 21, 1972 did initiate the procedures so mandated by setting the case for hearing to determine defective delinquency. It was not until months later, after postponement of two scheduled hearings for that determination, that the trial court, upon motion by the State, passed the order requiring Marsh to submit himself to examinations. Such examinations manifestly were not required to enable the institution to make its report to the court. In short, the court's order of March 12, 1973 had suspended, without factual necessity and without legal cause, the appellant's procedural rights assured by § 8 of Article 31B.

In the subject case it is crystal clear that the refusal of Marsh to submit to examination did not inhibit or prevent submission to the court of the report required by § 7 of Article 31B. Patuxent Institution's report declaring Marsh to be a defective delinquent had been submitted to the Circuit

Court for Prince George's County months before the order of March 12, 1973 had been passed. The latter order subsequently became the basis for the contempt sentence imposed upon the appellant.

We hold that § 8 becomes effective whenever Patuxent's written report commanded by § 7(a) declares that a patient is a defective delinquent. Upon the filing of such a report the patient named therein forthwith is entitled to the rights granted by subsections (b) and (c) of § 8. Under such circumstances, those rights may not be deferred because of an alleged failure of the inmate to submit to personal examinations.

The conclusion we have stated was implied in earlier decisions of the Court of Appeals and this Court. Thus, in *State v. Musgrove*, 241 Md. 521, 217 A. 2d 247, the Court of Appeals at page 531 [251] said:

> "* * * we are of the opinion that the legislature in using the term 'personal examination and study' must have intended that the examiner, be he a medical physician, a psychiatrist or psychologist, would use such methods and tests to ascertain the physical, psychiatric and psychological characteristics and deficiencies of the patient *as were necessary to enable the examiner to reach a valid opinion. Conceivably this would not always require the patient to talk to the examiner* although it would seem that usually it would, as the record indicates was true in the case before us." (Italics supplied.)

This Court, interpreting *Musgrove*, said in *Wise v. Director*, 1 Md. App. 418, 422, 230 A. 2d 692, 694:

> "* * * the effect of a prisoner's refusal to cooperate with the examining staff members is not that he is automatically classified as a defective delinquent, but rather that *the order of court referring a person to Patuxent for an examination as to defective delinquency cannot be defeated by the prisoner's*

*refusal to submit to examination."* (Italics supplied.)

See also: *Tippett v. State,* (4th Cir. 1971) 436 F.2d 1153, 1156 (footnotes 8 and 9), 1161 (concurring opinion, footnotes 4 and 5).

The implicit holdings in *Musgrove* and *Wise,* both *supra,* became clearer in later cases. In *McNeil v. Director, Patuxent Institution,* 407 U. S. 245, 32 L.Ed.2d 719, the Supreme Court said at pages 251-52 [724]:

> "* * * If the Patuxent staff members were prepared to conclude, on the basis of petitioner's silence and their observations of him over the years, that the petitioner is a defective delinquent, then *it is not true that he has prevented them from evaluating him.* On that theory, they have long been ready to make their report to the court, and *the hearing on defective delinquency could have gone forward."* (Italics supplied.)

In *Director v. Cash,* 269 Md. 331, 305 A. 2d 833, after noting (footnote 2, page 348 [842]) that: "Clifton Louis Cash appears in the record as an example of a report formulated for a noncooperative petitioner where there was sufficient historical data available upon which to base a diagnosis of defective delinquency," the Court of Appeals declared at page 348 [843]:

> "In sum, in the *Cash* case, all of the petitioners have either been discharged from Patuxent *or have had reports returned to the referring court for further court action as McNeil suggested should be done."* (Italics supplied.)

We believe that the dictum of the Supreme Court of the United States and the comment of the Court of Appeals of Maryland in *Director v. Cash, supra,* considered in connection with the procedural rights unequivocally assured by Article 31B, § 8, compel a finding that the order of March 12, 1973 was improvidently issued.

We do not retreat from our holding in *Savage, supra,* that

proceedings by way of petition for contempt afford an appropriate and constitutionally valid basis for action when the recalcitrance of an inmate of Patuxent Institution inhibits or prevents the determination whether he is a defective delinquent. A refusal to submit to the examinations authorized by Section 7 will not be permitted to defeat the purposes of the Article.

This is not to say that the sentence for contempt imposed below was illegal. A litigant will not be permitted to make the decision whether he will or will not obey the order of a court of competent jurisdiction. In *Donner v. Calvert*, 196 Md. 475, 77 A. 2d 305, it was said at page 488-89 [310]:

> "That does not mean, however, that in such a case [conviction for contempt], the proof must go beyond what is necessary to prove the contempt, which is that the defendant disobeyed an order of the court. That order may be based upon erroneous facts as found in the *Cassidy* [1] case, *supra*, or an erroneous conception of the law, such as was claimed in the *United Mine Workers* [2] case, *supra*. Nevertheless, it must be obeyed until such time as it is stricken out on application, or reversed on appeal, or otherwise ceases to be a vital and subsisting direction of a court with proper jurisdiction over the parties to the case." (Footnotes added.)

See Annot. 12 A.L.R.2d 1059, *et seq*.

In *Save-Mor Drugs v. Upjohn Company*, 225 Md. 187, 194, 170 A. 2d 223, 227, it was made clear that the rule recognized in *Donner*, *supra*, applies with equal force in civil and criminal contempt cases.

The rule governing the issue was clearly and succinctly

---

1. *Cassidy v. Puett Electrical Starting Gate Corp.*, 182 F. 2d 604 (4th Cir. 1950).
2. *United States v. United Mine Workers of America*, 330 U. S. 258, 91 L. Ed. 884.

restated in *Shapiro, Administrator v. Ryan*, 233 Md. 82, 195 A. 2d 596, wherein it was said at page 86 [598]:

> "In determining whether the appellant was properly held to be in contempt we must recognize a distinction which is well established in the law of contempt. This is the distinction between disobedience to or violation of an order of court which is void for lack of jurisdiction of the court to pass the order, and disobedience to or violation of an order which is merely erroneous due to a mistaken view of the facts or to a mistaken view of the law on the part of the court making the order, but is one which the court had jurisdiction to pass. An adjudication of contempt in the first situation may not be sustained, while a finding of contempt in the second situation will ordinarily be upheld."

In the subject case there is no question respecting the trial court's jurisdiction or its power, under other factual circumstances, to pass an order such as was passed on March 12, 1973. *McNeil v. Director, supra; Savage v. State, supra.* We hold, accordingly, that the trial court's order of March 12, 1973 was improvidently issued but that the sentence for contempt for violation of it was valid and effective until the order had been vacated on appeal or otherwise.[3] We vacate the order of March 12, 1973 and terminate the sentence for contempt on the date of the filing of this opinion. Article 5, § 18.

> *Order of March 12, 1973 vacated.*
> *Sentence for contempt terminated.*

---

**3.** From other records of this Court (*Joseph Franklin Marsh v. Director*, No. 44, September Term, 1974, Application for Leave to Appeal (Defective Delinquent)) we take judicial notice of the fact that on motion appellant, subsequent to this appeal, was granted a hearing to determine whether he was a defective delinquent and that on trial he was found to be such. *Lebrun v. Marcey*, 199 Md. 223, 228, 86 A. 2d 512, 515.