## EDGAR LYNDON WILSON *v.* STATE OF MARYLAND

[No. 831, September Term, 1975.]

*Decided April 14, 1976.*

The cause was argued before ORTH, C. J., and LOWE and MELVIN, JJ.

*Philip L. Marcus, Assigned Public Defender,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City* and *Michael Patryn, Assistant State's Attorney for Baltimore City* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The only significant holding of this opinion is that a trial judge may not order a *second* evaluation to determine delinquency by Patuxent authorities before the subject is provided a determination hearing (Md. Code, Art. 31B, § 8 (c)) upon the first evaluation of Patuxent authorities, once they have reported their findings that he was a defective delinquent.

On June 14, 1974 appellant was ordered by the Criminal Court of Baltimore to submit to an examination to determine whether he was a defective delinquent. Five months later (November 19, 1974) the Patuxent authorities reported the results of their evaluation, recommending his commitment to Patuxent as a defective delinquent. Counsel was appointed to represent appellant on January 14, 1975 and an order was issued for an independent psychiatric examination on January 28, 1975.

According to docket entries, the State's motion to postpone, made in open court on the day of trial (June 16,

1975), was granted. But for the docket entries, there is no record before us of what transpired at that time.[1] Without further explanation, the record discloses a second order dated June 16, 1975, directing appellant to submit to another examination:

" . . . for the purpose of determining whether or not he is a Defective Delinquent as defined in Section 5, Article 31B of the Annotated Code of Maryland; and more specifically that he shall submit to the following, such psychological tests they deem appropriate; psychiatric evaluation, and that he shall cooperate with the staff in the examination;

. . .

IT IS FURTHER ORDERED, that Respondent shall submit to and cooperate with these examinations on or before August 1, 1975."

Coincidentally, on June 16, 1975, the date of the postponement and the order for reevaluation, the report of the independent psychiatrist was filed. This report disagreed with the Patuxent report, concluding that appellant was *not* a defective delinquent as defined by Md. Code, Art. 31B, § 5.

Appellant contested the jurisdiction of the court in ordering a second evaluation by attempting to appeal to this Court on June 27, 1975. At the same time, he filed a "Notice of Stay of Interlocutory Order" pursuant to Md. Rule 1019. Treating the attempt to appeal as an application for leave to appeal, we dismissed that effort by unreported per curiam opinion on July 10, 1975, observing that since there is no

---

1. The State's brief attempts to explain what transpired but the record provided us contains nothing to support these assertions. Although we need not consider that explanation, it states as follows:

"On June 16, 1975, the date scheduled for a hearing, a psychiatric progress note dated May 29, 1975 (approximately two weeks prior to the scheduled hearing date), indicating bizarre and possibly psychotic behavior on the part of the Appellant, was presented to the Court. The trial judge then granted the State's motion for a postponement, and ordered that the Appellant cooperate with the staff of Patuxent as to a second evaluation."

right to appeal from an interlocutory order, we denied the application therefor.

On August 7, 1975, the judge was notified by letter from the Associate Director of Patuxent that appellant "continues to refuse the psychological examination and psychiatric examination as required by Article 31B and as ordered by you on June 20, 1975." [2] Upon the State's petition, the court ordered appellant to show cause on September 10, 1975 why he should not be held in contempt. Following a hearing on that date, the court held appellant in contempt and orally ordered him to be recommitted to Patuxent until he purged himself. There followed an order (filed September 10, 1975) commanding cooperation [3] and specifying the tests to which appellant must submit pursuant to the court's contempt finding.

This appeal ensued and issue is joined on the basic question of whether the court, after ordering one examination of defendant for possible defective delinquency under the authority of Md. Code, Art. 31B, § 6, could then order a second examination or reevaluation of the same defendant. No question is raised as to the validity of the customary procedure of providing interval notes pre-

---

2. The original order was dated 6/16/75, as was the related docket entry. A photostatic copy appears in the file attested by the clerk as a true copy and dated 6/20/75. We will refer to that order henceforth as the order of June 16, 1975.

3. "ORDERED, that the Respondent shall cooperate with the Professional Staff of Patuxent Institution, who shall cause him to be examined for the purpose of determining whether or not he is a Defective Delinquent as defined in Section 5, Article 31B of the Annotated Code of Maryland; and more specifically that he shall submit to the following testing procedures: (1) The Wechsler Adult Intelligence Scale; (2) The Bender-Gestalt Test; (3) The Projective Drawing Test; (4) The Rorschak Ink Blot Test; (5) A Social Service Interview; (6) An Electroencephologram; and (7) A Psychiatric Interview; and that he shall cooperate with the Staff in the examination; and

IT IS FURTHER ORDERED, that any information elicited from the Defendant during the course of his examination and evaluation at Patuxent Institution shall not be used, directly or indirectly, as a basis for subsequent criminal prosecution of the Defendant; and

IT IS FURTHER ORDERED, that Respondent shall submit to and cooperate with these examinations on or before October 22, 1975."

paratory to trial bringing to date a previously completed examination. The objection here is to a reevaluation de novo, *i.e.*, from the beginning.

In *Marsh v. State*, 22 Md. App. 173, we dealt with a factual pattern similar to that here. The *authority* of the court to order a complete reevaluation was not the issue there, although the facts did reveal that an order for a second evaluation of Marsh had issued on March 12, 1973. Judge Menchine acknowledged the possibility of such an issue being raised at some other time but pointed out that such was not the issue to be decided there:

> "In the subject case there is no question respecting the trial court's jurisdiction or its power, under other factual circumstances, to pass an order such as was passed on March 12, 1973." *Marsh v. State*, 22 Md. App. at 185.

It appears that the only jursidictional question raised in *Marsh*, and that only parenthetically, was the contention that the trial judge lacked the power to compel *cooperation* in the examination by exercise of the court's contempt power. Short shrift was given that contention because we had answered it in *Savage v. State*, 19 Md. App. 1. Left for another day was the question of whether the authority to compel cooperation, which we have held is implicit in the authority to order an examination, see *Williams v. Fulwood v. Director*, 276 Md. 272, gives rise to another authority to order a second examination — which would in turn give rise to further implicit authority to compel cooperation at that examination — ad infinitum. Although that issue was not decided in *Marsh*, the direction we take today was pointed to by its holding.

It appeared that, although Marsh had at *no* time cooperated with the Patuxent authorities ordered to examine him, the Patuxent authorities were able to arrive at a conclusive diagnosis and reported, not once but twice, that Marsh was a defective delinquent. *Id.* at 177. Based upon the fact that *a* report was not prevented by Marsh's lack of cooperation, we held that he could not be found in contempt

for failure to cooperate in examinations subsequent to Patuxent's report of its conclusion, nor could his cooperation be made a condition for the provision of certain prescribed statutory rights. We held there that, upon the court's receipt of Patuxent's written report declaring the patient a defective delinquent, the patient was then "forthwith" entitled to the rights guaranteed by the statute.

> "Under such circumstances, those rights may not be deferred because of an alleged failure of the inmate to submit to personal examinations." *Marsh v. State*, 22 Md. App. at 182.

We now move to the next step beyond *Marsh* and hold that, once a conclusion is reached based upon an examination conducted with the cooperation of the patient, and that conclusion is reported to the court by Patuxent authorities, there is *no* authority within the statute for the court to reorder a new examination or complete re-evaluation. If the defendant's condition has changed prior to, or at, the determination hearing, the customary procedural interval note may bring to the court's attention any such changes manifested since the original examination which are proper considerations for the fact finders.

In their brief, the State relies upon the rationale used in that portion of *Williams and Fulwood v. Director, supra,* which relied upon *Restivo v. Princeton Constr. Co.*, 223 Md. 516, 525, reasoning:

> " 'That which necessarily is implied in a statute is as much a part of it as that which is expressed. . . .' " *Williams*, 276 Md. at 303.

The State also notes that *Williams* relied on the retention of jurisdiction, added by amendment to Art. 31B, § 6 (e), and reasoned that:

> "The fact that the Court is to retain jurisdiction indicates to us that it would have the power to pass any orders that might be requisite under those sections." *Id.* at 303.

This language obviously refers to the power to carry out the authority conferred by the Legislature, not to the power to expand upon that authority. This reasoning was used in *Williams* to reach the result at which we arrived in *Savage*, *i.e.*, that the power to order an examination of a person implicitly includes the authority to enforce that order. This is precisely what Judge Smith said in *Williams*:

> "It would be absurd to say that under the statute a court could send a man to Patuxent for examination and then to say that under the same statute the court is powerless to direct that he cooperate in his very purpose for being at Patuxent." *Id.* at 304.

We fail to see how that rationale — that the authority to order an examination implies the power to order its completion — supports the proposition that the authority to order an examination once implies a continuing authority to order that such examination be repeated (and if once, then ad infinitum), thus undercutting appellant's right to have a determination hearing as reasonably promptly as possible. Art. 31B, § 8; *Cf. Marsh v. State, supra.*

The Court of Appeals has clearly held that when a court of general jurisdiction conducts a hearing to determine defective delinquency under Md. Code, Art. 31B, it sits as a court of special jurisdiction and, as such, its power is limited to that expressly provided in the statute. *Austin v. Director*, 245 Md. 206, 209; *State v. Reichman*, 16 Md. App. 581, 585. Growing out of that jurisdictional limitation, it has been held that in defective delinquency proceedings there is no authority for the court to order:

1) a removal, *Bullock v. State*, 230 Md. 280;
2) a new trial, *Austin, supra*;
3) an interim redetermination, *State v. Reichman, supra*; or
4) work release, *State v. Blakney*, 8 Md. App. 232.

The State reads into the statute express authority for reordering examination or reevaluations because the

examination may be ordered "[w]henever" a request is made, Art. 31B, § 6 (b), and such a request may be made "at any time" after the person has been convicted of a crime.

As obviously strained as that argument appears, in statutory context it is even less persuasive. The "Whenever" sentence reads:

> "Whenever a request for examination comes from any such source the court may order such person to be examined by the institution for defective delinquents to ascertain if he or she is a defective delinquent."

There is certainly nothing in that sentence to indicate that the Legislature had in mind authorizing multiple examinations prior to a determination hearing. Nor is such intent to be found in the sentence using the phrase "at any time":

> "Such an examination may be requested and made at any time after the person has been convicted and sentenced for a crime. . . ."

The necessity for a court strictly to adhere to the jurisdictional limitations of the statute, to the exclusion of its general inherent or common law authority, is especially obvious in a proceeding such as a determination of defective delinquency where a defendant is not provided the many protections of a criminal proceeding, and may be subjected to imprisonment (for "treatment" purposes) for a longer period than any criminal sentence theretofore prescribed. Although the power to enforce compliance *with that which is authorized* is clearly implicit in a legislative designation of authority, *Williams, supra,* courts have no right to expand that authority specially conferred by the Legislature.

> "No principle is better established than that in exercising a statutory power, a court is without jurisdiction unless it complies with the statute." *Scherr v. Braun,* 211 Md. 553, 563.

If the authority to order repeated reevaluations is to be

granted in defective delinquency proceedings, the Legislature, not the courts, should provide it. *Cf. Austin v. Director, supra.*

Because we base our holding on the absence of express authority in the court to order more than one examination, it is hardly becoming for us to weigh the policy pros and cons of whether second or third examinations *should* be permitted by statute or, if permitted, what safeguards should be required as a guarantee against abuse of such discretion. The factual context of the case before us indicates prima facie some need for such guidelines. The record here reveals:

1. An examination was ordered;
2. counsel was appointed and petitioned for an independent examination; and
3. Patuxent reported that appellant was a defective delinquent.

Then, on the day of the delinquency hearing;

1. Appellant's independent psychiatric report was filed outlining reasons why his psychiatrist did not believe him to be a defective delinquent, upon which appellant's defense would stand or fall.
2. On the same day a postponement and a new examination were ordered upon the State's motion.

However well-motivated the State, the Patuxent authorities, and the court may have been in this particular case,[4] there is obvious cause for concern that an accused's defense to a determination that he is a defective delinquent may be undermined by the power to order a second examination once the contents of the independent psychiatric report are known.

---

4. There is a stipulation in the record that the judge knew of "bizarre and possibly psychotic behavior" on the part of appellant since the initial examination by Patuxent authorities.

Having reversed upon the jurisdictional issue, we need not reach the other three questions raised by appellant. Recognizing that we are not precluded from speaking upon the merits of issues raised but not necessary to the result of a case, here we are not inclined to do so. We are not persuaded that the issues have sufficient merit to move our response.

We reverse the judgment of the court expressed by Judge Vern J. Munger, Jr. holding appellant in contempt on September 10, 1975, and vacate the order signed by him and filed on that date, commanding appellant's cooperation for a reexamination. The order of June 16, 1975, signed by Judge Mary Arabian, first commanding appellant's submission to reexamination is also vacated. Appellant shall remain in Patuxent Institution, however, until he is tried as a defective delinquent upon the initial evaluation filed heretofore and supplemented by such interval notes as are necessary to bring that analysis current for purposes of the trial.

> *Judgment of contempt reversed.*
> *Orders dated June 16, 1975 and September 10, 1975 vacated.*
> *Costs to be paid by Baltimore City.*