EDWARD ARNOLD MOSS *v.* DIRECTOR,
PATUXENT INSTITUTION

[No. 88, September Term, 1976.]

*Decided March 2, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*John H. Harman, Assigned Public Defender,* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ORTH, J., dissents and filed a dissenting opinion at page 569 *infra.*

The issue in this case is whether the petitioner's confinement at the Patuxent Institution is proper. Since we conclude that a statutory condition precedent to his institutionalization there was not complied with, we are constrained to hold that petitioner Edward Arnold Moss must be released from Patuxent and returned to the custody of the Department of Correction to serve the remainder of his sentence.

Initially, we think it appropriate to delineate briefly those procedures which must be followed before one is committed to Patuxent under the Defective Delinquent Act. Md. Code (1957, 1976 Repl. Vol. & 1976 Cum. Supp.), Art. 31B. Pursuant to Section 6 of the Act, persons convicted and sentenced for certain specified crimes may be transferred to the

institution for examination by a medical physician, a psychiatrist, and a psychologist. Under Section 7 (a), these specialists assemble all pertinent information about the convicted criminal, personally examine the individual, determine whether in their opinion he is a defective delinquent, and state their findings in a written report to the court. If the examiners conclude that the individual is a defective delinquent, then pursuant to Section 8 (a) the court "forthwith" calls that person before it to advise him of three matters: (1) the substance of the report; (2) the pendency of the hearing provided for in Section 8 (c); and (3) his right to counsel at that hearing. If at the Section 8 (c) hearing the individual is found by the court or jury, as the case may be, to be a defective delinquent, then under Section 9 (b) he is ordered committed to Patuxent for an indeterminate period; if he is determined not to be a defective delinquent, he resumes serving his original sentence as if he had not been examined for possible defective delinquency. Section 9 (a).[1]

Turning to the facts relevant to our disposition of this case, we begin with the series of events which developed after Moss was sentenced on October 31, 1973 to a fifteen-year prison term following guilty pleas to two robbery charges and one escape charge. Six days thereafter, by order of the Circuit Court for Montgomery County, the petitioner was transferred to Patuxent for examination to ascertain whether he was a defective delinquent. Art. 31B, § 6 (b). He arrived at the institution for evaluation on the day after Christmas, and within three weeks the personnel at Patuxent completed their diagnosis. Although a report opining that Moss was a defective delinquent was filed with the court on March 22, 1974, well within the six-month period provided for in Section 7 (a), it was not until July 29 of that year that Moss was brought before the court pursuant to Section 8 (a) to be advised of the report and of his rights in connection with the ensuing proceedings. On the sixth of August, Moss filed a motion to dismiss the

---

1. For a recent explication of the Defective Delinquent Act, see our discussion in Williams and Fulwood v. Director, 276 Md. 272, 287-92, 347 A. 2d 179, 187-90 (1975), *cert. denied,* 425 U. S. 976 (1976).

defective delinquency proceeding on the ground that, since he had not been brought before the court until four months after the report was received by it, his Section 8 (a) right to a prompt hearing had been violated. This motion was not immediately ruled upon, and in fact was not denied until eight months later, on April 10, 1975, at the outset of the trial at which Moss was determined by a jury to be a defective delinquent. After the Court of Special Appeals granted leave to appeal, it affirmed the order of the Circuit Court for Montgomery County determining Moss to be a defective delinquent and directing that he "be returned to the Patuxent Institution ... for an indeterminate period without either maximum or minimum limits." *Moss v. Director*, 32 Md. App. 66, 359 A. 2d 236 (1976). We granted certiorari to review this decision.

Our primary concern here is whether the time requirement in Section 8 (a) is mandatory or directory. In full that provision reads:

> If the institution for defective delinquents in its report on any person shall state that he is a defective delinquent, *the court shall forthwith summon the person before it* and advise him of the substance of the report and of the pendency of the hearing hereinafter provided; the court shall further advise him of his right to be represented at said hearing by counsel of his choice, or if he has no choice, by competent counsel appointed by the court. [(Emphasis added.)]

Although the Court of Special Appeals in this case concluded that there was "little to be gained by attempting to classify § 8 (a) either as 'mandatory' or as 'directory,'" 32 Md. App. at 71, 359 A. 2d at 240, that court had previously indicated that the "forthwith" language was mandatory, *see Wilson v. State*, 31 Md. App. 255, 260, 355 A. 2d 752, 755 (1976); *Smith v. Director*, 27 Md. App. 618, 625, 342 A. 2d 334, 339, *cert. denied*, 276 Md. 749 (1975); *Marsh v. State*, 22 Md. App. 173, 182, 322 A. 2d 247, 251 (1974), and we agree that it is. It is now a familiar principle of statutory construction in this

State that use of the word "shall" is presumed mandatory unless its context would indicate otherwise, *see, e.g., United States Coin and Currency in the Amount of $21,162.00 v. Director of Finance of Baltimore City,* 279 Md. 185, 187, 367 A. 2d 1243, 1244 (1977); *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A. 2d 248, 251 (1975); *Maryland St. Bar Ass'n v. Frank,* 272 Md. 528, 533, 325 A. 2d 718, 721 (1974), and in this case we discern no indication in Section 8 or elsewhere in the Act that the General Assembly intended this time proviso to be directory only.

Any reliance on *Director v. Cash,* 269 Md. 331, 305 A. 2d 833 (1973), *cert. denied,* 414 U. S. 1136 (1974), for the proposition that the clause under scrutiny here is directory would be misplaced, since our holding there — that compliance with the time requirement of Section 7 (a) of the Act is not mandatory — is clearly distinguishable. Section 7 (a), which deals with examinations of those individuals transferred to Patuxent for preliminary determination of defective delinquency, provides that the examiners "shall state their findings in a written report addressed to the court, not later than six months from the date said person was received in the Institution for examination, or three months, before expiration of his sentence, whichever first occurs." In *Cash,* we were faced with a situation where all of the appellees had refused to submit to examination by the institution's experts and then argued that they should be released from Patuxent on the ground that the six-month period had elapsed. Under those circumstances, we concluded that the General Assembly could not have intended Section 7 (a) to be mandatory in light of the fact that if that were so, any person transferred to Patuxent could thwart the operation of the Act merely by refusing to submit to an examination. *Director v. Cash, supra* at 341-42 [839]; *see McNeil v. Director, Patuxent Institution,* 407 U. S. 245, 247 n. 2, 92 S. Ct. 2083, 32 L.Ed.2d 719 (1972), *citing State v. Musgrove,* 241 Md. 521, 217 A. 2d 247 (1966). Section 8 (a), however, which we now hold to mandate the "forthwith" summoning of a person found by the Patuxent examiners to be a defective delinquent, does not have the

same potential for abuse by defendants, since it is totally within the power of the court to bring the person before it. We also note that although the absence of a penalty provision may be one indication that language is directory, *see Director v. Cash, supra* at 345 [841], it is not dispositive. We have only recently determined that the ninety-day time period of Article 27, Section 264 (c), Md. Code (1957, 1976 Repl. Vol.), for the filing of forfeiture petitions is mandatory, even though there is no penalty provision contained in that statute. *United States Coin and Currency in the Amount of $21,162.00 v. Director of Finance of Baltimore City, supra,* 279 Md. at 187-88, 367 A. 2d at 1244.

We are also mindful of the familiar principle of law whereby if there are two reasonable constructions that can be placed upon a statute, one of which will result in its unconstitutionality and the other of which will not, we must construe the enactment so as to avoid conflict with the State or Federal Constitutions. *See Moberly v. Herboldsheimer,* 276 Md. 211, 217, 345 A. 2d 855, 858 (1975). In this context, we note that while a holding contrary to the one we reach today may not alone render Article 31B unconstitutional, such a result coupled with other decisions similarly eroding the protections afforded defendants could place the entire statute in jeopardy. As this Court recently pointed out, the Maryland Defective Delinquent Act approaches the problem of a certain class of mentally disturbed offenders who are not legally insane in a unique manner — conviction of a crime, not mere accusation is a prerequisite, and the period of confinement under our statute, unlike those of other states, may extend beyond the offender's prison sentence. *Williams and Fulwood v. Director,* 276 Md. 272, 287, 347 A. 2d 179, 187 (1975), *cert. denied,* 425 U. S. 976 (1976). Because of this latter aspect — indeterminate commitment — as well as the fact that Patuxent functions, perhaps to some in Cerberean fashion, as a prison, a hospital, and a mental institution, *Eggleston v. State,* 209 Md. 504, 513, 121 A. 2d 698, 702 (1956), it has come under repeated constitutional attack since its establishment some twenty-two years ago. Although the statute has weathered these assaults in the

past, we are by no means convinced that it is impregnable, particularly should its cloak of procedural safeguards be weakened in any substantial manner. For example, each time the United States Court of Appeals for the Fourth Circuit has entertained challenges to the Act, it has explicitly noted that the panoply of procedural safeguards saves the statute, and if these were abandoned or administered in a lax manner, confinement pursuant to Article 31B might well contravene the Federal Constitution. *See Dower v. Boslow,* 539 F. 2d 969, 973 (4th Cir. 1976); *Tippett v. State of Maryland,* 436 F. 2d 1153, 1158 n. 18 (4th Cir. 1971), *cert. dismissed per curiam sub nom. Murel v. Baltimore City Criminal Court,* 407 U. S. 355 (1972); *Daugherty v. State of Maryland,* 355 F. 2d 803, 805 (4th Cir.), *cert. denied,* 385 U. S. 859 (1966); *Sas v. State of Maryland,* 334 F. 2d 506, 516-17 (4th Cir. 1964). And even though this Court in the past has asserted on a number of occasions that defective delinquency proceedings are "civil" as opposed to "criminal," *see Williams and Fulwood v. Director, supra* at 295-97 [192] (citing numerous cases), we have, in common with the federal courts, steadfastly maintained that the Act's procedures must assure that the due process rights of those committed pursuant to it are not violated, *see, e.g., McCloskey v. Director,* 245 Md. 497, 503, 226 A. 2d 534, 538, *cert. denied,* 388 U. S. 920 (1967); *Director v. Daniels,* 243 Md. 16, 45, 221 A. 2d 397, 414, *cert. denied,* 385 U. S. 940 (1966), bearing in mind that proceedings under the Act to some extent are akin to those in a criminal case. *See, e.g., Mastromarino v. Director,* 243 Md. 704, 706, 221 A. 2d 910, 911 (1966) (per curiam) (defective delinquency proceedings differ in "important aspects" from other civil proceedings); *Blizzard v. State,* 218 Md. 384, 390, 147 A. 2d 227, 231 (1958) (Act "quite properly" throws extensive protections around the person involved); *cf. McNeil v. Director, Patuxent Institution, supra,* 407 U. S. at 254-55 (Douglas, J., concurring) (Fifth Amendment privilege against self-incrimination applies to administrative examination at Patuxent prior to defective delinquency hearing); *Williams and Fulwood v. Director, supra* at 314 [201-02] (Eldridge, J.,

joined by Digges & Levine, JJ., dissenting) (same); Adkins, *Code Revision in Maryland: The Courts and Judicial Proceedings Article*, 34 Md. L. Rev. 7, 23 & n. 75 (1974) (defective delinquent law is civil proceeding having "close relationship" to criminal law). *See generally* Aronson, *Should the Privilege Against Self-incrimination Apply to Compelled Psychiatric Examinations?*, 26 Stan. L. Rev. 55 (1973); Schreiber, *Indeterminate Therapeutic Incarceration of Dangerous Criminals: Perspectives and Problems*, 56 Va. L. Rev. 602 (1970); Note, *"Defective Delinquent" and Habitual Criminal Offender Statutes — Required Constitutional Safeguards*, 20 Rutgers L. Rev. 756 (1966).

Having determined that Section 8 (a) is mandatory, we now consider whether, in this case, Moss was brought before the court "forthwith." We conclude, and the director concedes, that he was not. We agree with the Court of Special Appeals in this case "that in the context of Art. 31B, § 8 (a), 'forthwith' does not mean instantaneous, but it does mean with all reasonable dispatch consistent with the circumstances." 32 Md. App. at 73, 359 A. 2d at 241. This definition is in accord with our prior cases, *see, e.g., Ervin v. Beland*, 251 Md. 612, 617, 248 A. 2d 336, 339-40 (1968); *Edwards v. Balto. Fire Ins. Co.*, 3 Gill 176, 187-88 (1845), and although the term is not susceptible of a fixed time formulation, *Wallace v. Leggett*, 248 Miss. 121, 158 So. 2d 746, 749 (1963), we would add that absent compelling circumstances, "forthwith" as used in Section 8 (a) is a far cry from the four-month lapse here. *See generally* Black's Law Dictionary 782 (rev. 4th ed. 1968); 17 Words and Phrases *Forthwith* (1958).

We are, however, unable to agree with the Court of Special Appeals' conclusion that, notwithstanding the Section 8 (a) violation, Moss is entitled to no relief since he could not show any due process deprivation. Given the fact that Section 8 (a) is mandatory and the further fact that its command was not obeyed, we hold that the proceedings by the State to have Moss committed to Patuxent must be dismissed, regardless of whether his due process rights were denied. *See United States Coin and Currency in the Amount*

of $21,162.00 v. Director of Finance of Baltimore City, supra, 279 Md. at 188, 367 A. 2d at 1244; cf. Jones v. State, 279 Md. 1, 18, 367 A. 2d 1, 12 (1976) (only remedy for speedy trial violation is dismissal of indictment). Consequently, we determine that Moss must be returned to the custody of the Department of Correction to resume his original sentence with full credit for time spent at Patuxent. Cf. Art. 31B, §§ 7 (a), 9 (a). Reaching this result, we need not consider either the petitioner's contention that he was denied due process of law or that the hearing judge was in error when he refused to give a proffered jury instruction.

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to that court with directions that it reverse the order of the Circuit Court for Montgomery County and remand the case to that court with instructions to dismiss the defective delinquent proceedings.*
>
> *Costs to be paid by Montgomery County.*

*Orth, J., dissenting:*

It is my opinion that the Court of Appeals does not have jurisdiction to review the judgment of the Court of Special Appeals.

Edward Arnold Moss was found to be a defective delinquent by a jury in the Circuit Court for Montgomery County. The court thereupon ordered Moss to be confined in Patuxent Institution as a defective delinquent for an indeterminate period. Moss applied for leave to appeal from that order to the Court of Special Appeals. The application was granted. The case was transferred to the appeal docket, briefs were filed, and argument heard. The order of the lower court was affirmed. *Moss v. Director*, 32 Md. App. 66, 359 A. 2d 236 (1976).

Maryland Code (1957, 1976 Repl. Vol.) Art. 31B, § 11, pertaining to applications for leave to appeal in defective delinquent proceedings, includes the provision: "If the application for leave to appeal is granted, the procedure for appeal shall conform to the rules of the Court of Special Appeals." Maryland Rule 1094 c provides in material part: "If leave to appeal is granted, unless the Court [of Special Appeals] otherwise directs, further proceedings shall be had pursuant to this chapter as if the order granting leave to appeal were the order of appeal filed pursuant to Rule 1012 (Appeal — Times for Filing)."

Maryland Code (1974, 1975 Cum. Supp.), Courts and Judicial Proceedings, Article § 12-201, confers upon the Court of Appeals the power to issue a writ of certiorari to the Court of Special Appeals in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the Maryland Tax Court "[e]xcept as provided in § 12-202 . . . ." Section 12-202 reads:

> No review by way of certiorari may be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted:
>
> (1) Leave to prosecute an appeal in a post conviction proceeding;
>
> (2) Leave to prosecute an appeal in a defective delinquent proceeding;
>
> (3) Leave to appeal from a refusal to issue a writ of habeas corpus sought for the purpose of determining the right to bail or the appropriate amount of bail.

To me, there is no ambiguity whatsoever in the dictates of § 12-202. The plain and certain language leaves nothing to be construed or interpreted. The sure legislative intent is clearly expressed in the command that "[n]o review by way of certiorari may be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted. . ." leave to appeal in any of the three

specified proceedings, one of which is the proceeding here —
a defective delinquent proceeding.

The Court of Appeals has acknowledged that it has no
jurisdiction to review a decision of the Court of Special
Appeals granting or denying leave to appeal under § 12-202
in a post conviction proceeding. *Jourdan v. State*, 275 Md.
495, 506, n. 4, 341 A. 2d 388 (1975), Smith, J. dissenting on
other grounds. But the Court justified review, despite the
provisions of the statute, in this way:

> However, once the Court of Special Appeals grants
> leave to appeal in such a case and transfers the case
> to its appeal docket, the matter takes the posture of
> a regular appeal, and we do have jurisdiction under
> § 12-201 of the Courts and Judicial Proceedings
> Article to review the Court of Special Appeals'
> decision on the appeal itself.

As it is patent that there is no reasonable distinction to be
made between a post conviction proceeding and a defective
delinquent proceeding in the contemplation of § 12-202, it is
fair to assume that review here was granted on the same
rationale as it was in *Jourdan*.

I cannot agree that merely because *procedures* adopted to
bring a granted application for leave to appeal to argument
before the Court of Special Appeals are the same as those to
bring a direct appeal to argument, the application for leave
to appeal attains the status of a direct appeal so as to confer
on the Court of Appeals jurisdiction to review the proceeding
when such review is so plainly prohibited by § 12-202. The
position of the Court of Appeals is manifestly incongruous in
that its reasoning does not serve to permit a review of a
defective delinquent or post conviction proceeding when the
application for leave to appeal is denied by the Court of
Special Appeals, no matter what the ground stated in the
opinion accompanying the denial. And, perhaps of even
more significance, is that under the reasoning of the Court
of Appeals it may not review such a proceeding when the
Court of Special Appeals grants the application for leave to
appeal and does not transfer the case to the appeal docket

but, as it may under the rules, simply issues an opinion in which the order appealed from is affirmed, reversed or modified, or the case remanded for further proceedings, without briefs being filed or argument heard.

Whether it is advisable for the Court of Appeals to have power to review by way of certiorari decisions of the Court of Special Appeals under grants of leave to appeal is not here relevant. If it is advisable, it may be properly accomplished by legislative action. What the Court is doing by assuming jurisdiction in the face of the legislative prohibition is, I believe, putting judicial preference before legislative intent. I think that the petition for writ of certiorari should have been denied for lack of jurisdiction.